UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WALTER CLINE,

      Plaintiff,

v.                               Case No:   2:15-cv-480-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court on Plaintiff Walter Cline's Complaint (Doc. 1) filed on August 12, 2015.  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, disability insurance benefits, and supplemental security income.  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, the ALJ's Decision, and Standard of Review

### A.  Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any

other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.

### B.  Procedural History

On August 3, 2012, Plaintiff filed an application for disability insurance benefits and for supplemental security income asserting an onset date of July 9, 2012.  (Tr. at 170, 177). Plaintiff's applications were denied initially on September 27, 2012 (Tr. at 61, 69), and upon reconsideration on January 7, 2013 (Tr. at 77, 90).  A video hearing was held before Administrative Law Judge ("ALJ") S. D. Schwartzberg on March 12, 2014.  (Tr. at 28-60).  The ALJ issued an unfavorable decision on March 12, 2014.  (Tr. at 10-27).  The ALJ found Plaintiff not to be under a disability from July 9, 2012, through the date of the decision.  (Tr. at 23).

On June 10, 2015, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-6). Plaintiff filed a Complaint (Doc. 1) in this Court on August 12, 2015.  Defendant filed an Answer (Doc. 8) on September 29, 2015.  The parties filed Memoranda in support.  (Docs. 14, 15).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 12).  This case is ripe for review.

### C.  Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled.  *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1]  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe

---

[1] Unpublished opinions may be cited as persuasive on a particular point.  The Court does not rely on unpublished opinions as precedent.  Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.  Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform his past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

In this case, the ALJ found that Plaintiff met the insured status requirements through December 31, 2015. (Tr. at 15). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 9, 2012, the alleged onset date. (Tr. at 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: coronary artery disease, atrial flutter, and obesity. (Tr. at 15). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 18).

Based on the evidence, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work except "no climbing ladders, ropes and scaffolds; otherwise, frequent postural activities (such as climbing ramps and stairs, balancing, stooping, crouching, kneeling and crawling)." (Tr. at 19). Additionally, the ALJ stated that Plaintiff "should avoid concentrated exposure to extreme heat, humidity and hazards." (Tr. at 19).

At step four, the ALJ determined that Plaintiff "is capable of performing past relevant work as a returns clerk and retail sales person." (Tr. at 23). The ALJ stated that "[t]his work does not require the performance of work-related activities precluded by the claimant's residual

functional capacity." (Tr. at 23). Specifically, as the ALJ noted, a vocational expert ("VE") testified that Plaintiff "had past work as a returns clerk and retails sales person which were semi-skilled vocationally (SVP 3) and required light exertion." (Tr. at 23).[2] The ALJ stated that in comparing Plaintiff's RFC "with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed." (Tr. at 23). The ALJ stated that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles*. (Tr. at 23). Further, the ALJ stated that "[e]ven if [Plaintiff] were found to have severe mental impairments and limited to unskilled work, pursuant to 20 CFR, Subpart P, Appendix 2, there are approximately 1,600 separate sedentary and light unskilled occupations that can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy." (Tr. at 23).

Because the ALJ determined that Plaintiff could perform his past relevant work, the ALJ did not proceed to step five. (*See* Tr. at 23). The ALJ found that Plaintiff had not been under a disability from July 9, 2012, through the date of the decision. (Tr. at 23).

### D.  Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

---

[2] "SVP" refers to the Specific Vocational Preparation code.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II.   Analysis

On appeal, Plaintiff raises three issues:

(1) The credibility assessment performed by the ALJ is not in compliance with 20 C.F.R. §§ 404.1529, 416.929, and SSR 96-7p because the ALJ discredited Plaintiff and reversed the findings made on and off the record at [the] hearing to penalize Plaintiff for refusing to accept the ALJ's proposal to amend the disability onset date.

(2) The ALJ failed to provide claimant with a full and fair hearing within the meaning of 20 C.F.R. §§ 404.944; 416.1444 because he refused to consider Plaintiff's testimony in determining the onset date for disability.

(3) The ALJ committed harmful error when he found that Plaintiff's mental impairments, including posttraumatic stress disorder (PTSD), depression, and anxiety, were non-severe and trivial within the meaning of 20 C.F.R. §§ 404.1521(a), 416.921(a).

(Doc. 14 at 1-2). The Court addresses each of these issues in turn.

## A.  The ALJ's Credibility Determination of Plaintiff

The first issue raised by Plaintiff concerns the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not entirely credible.  (*See* Doc. 14 at 1, 7 (citing Tr. at 21)).

### 1.  Arguments

Plaintiff contends that the ALJ discredited Plaintiff and reversed findings made on and off the record at the hearing to penalize Plaintiff for refusing to accept the ALJ's proposal to amend the disability onset date.  (Doc. 14 at 1, 7).  Plaintiff argues that the ALJ "implicitly found Plaintiff fully credible as of October 2013."  (*Id.* at 7 (citing Tr. at 31, 58)).  Despite this implicit finding, however, Plaintiff states that "[w]hen Plaintiff's Counsel was questioning Plaintiff at the hearing, the ALJ explicitly interjected to direct Plaintiff to testify about his problems prior to October 2013."  (*Id.* at 7-8 (citing Tr. at 35)).  Plaintiff argues that the ALJ found Plaintiff had problems at the time of the hearing.  (*Id.* at 8 (citing Tr. at 35, 58)).  Nevertheless, Plaintiff contends that "[o]ff the record, the ALJ explicitly stated he would approve the claim as of October 2013, but only if Plaintiff voluntarily amended his onset date."  (*Id.*)  Plaintiff states that he "declined to amend his onset date at the hearing and this was confirmed by letter, following the hearing, because Plaintiff believed he was disabled as of the original onset date of July 2012."  (*Id.*).

Plaintiff argues that "[d]espite finding Plaintiff to be fully credible concerning his capacity to work as of October 2013" at the hearing, the ALJ "discredited Plaintiff's testimony and complaints in rendering an unfavorable decision" in his decision.  (*Id.* at 8 (citing Tr. at 21)).  While the ALJ stated that amending the onset date would not hurt Plaintiff's case (Tr. at 31), Plaintiff argues that the ALJ nevertheless "followed through with his off-the-record warning that

he would issue an unfavorable decision." (Doc. 14 at 8).  Further, while acknowledging that "[t]he analysis in the ALJ Decision's appears on the surface to provide legitimate reasons for discrediting Plaintiff," Plaintiff argues that "the explicit statements made by the ALJ evidences a different reason for discrediting Plaintiff's testimony:  to penalize the Plaintiff for refusing to voluntarily amend his onset date to October 2013."  (*Id.*).

In addition to his contentions regarding the onset date, Plaintiff argues that the reasons provided by the ALJ are improper, legally inadequate, and not an accurate characterization of the record.  (*Id.* at 9).  For instance, Plaintiff points out that the ALJ's Decision "states that the evidence fails to substantiate allegations of 'total disability.'"  (*Id.* (citing Tr. at 21)).  Plaintiff contends, however, that he "is not alleging that he is 'totally disabled.'"  (*Id.*).  Rather, Plaintiff states that he is alleging that "he is unable to engage in substantial gainful activity within the meaning of 20 C.F.R. §§ 404.1505(a), 416.905(a)."  (*Id.*).  Thus, Plaintiff argues that "the legal standard applied in assessing Plaintiff's credibility does not appear to be consistent with the definition of disability set forth in the Act."  (*Id.*).

Finally, Plaintiff argues that the ALJ cites his participation in mundane daily activities for the conclusion that Plaintiff can work full-time.  (*See id.*).  Plaintiff argues that these activities – such as the ability to perform self-help activities, shop, go to the movies, cook, clean, and walk up a flight of stairs without a problem – are not comparable nor probative of Plaintiff's ability to work.  (*Id.* (citing Tr. at 21)).  Instead, Plaintiff argues that "the reasons provided clearly appear to be a pretext for the ALJ to deny the Claim due to Plaintiff's refusal to amend his onset date."  (*Id.*).  Thus, Plaintiff argues that "the ALJ's finding that Plaintiff is not credible is not supported by substantial evidence" and that "[t]he ALJ's statements, both on and off the record, suggest he has a compromised ability to objectively adjudicate this case on remand."  (*Id.* at 10).

Defendant strongly disagrees with Plaintiff's contentions.  (*See* Doc. 15 at 4).  Defendant

states that "[i]n assessing Plaintiff's residual functional capacity (RFC), the ALJ partially

credited Plaintiff's subjective complaints when he limited Plaintiff to a reduced range of light

work."  (*Id.* (citing Tr. at 19)).  Nevertheless, Defendant states that "[t]he ALJ then fully

evaluated the intensity and persistence of Plaintiff's subjective complaints and properly found

Plaintiff's remaining complaints were not credible because they were inconsistent with the

objective medical evidence, state agency opinion, and Plaintiff's fairly intact daily activities."

(*Id.* (citing Tr. at 19-22)).

Defendant contends that the ALJ applied the correct legal standards in assessing

Plaintiff's credibility and that substantial evidence supports the ALJ's credibility assessment.

(*Id.* at 6).  For example, Defendant points to Plaintiff's cardiac records that show "generally

normal cardiac findings after his coronary artery bypass graft and conservative treatment" for the

proposition that the objective medical evidence provides substantial evidence supporting the

ALJ's credibility assessment.  (Doc. 15 at 7 (citing Tr. at 389, 391, 609-10, 636, 687-88, 787,

792, 817-18, 834-36)).

Additionally, Defendant argues that "[a]lthough not dispositive, a claimant's activities

may show that his symptoms are not as limiting as alleged."  (*Id.* at 8).  Defendant contends that

"Plaintiff's self-reported abilities were not indicative of the disabling limitations he alleged."

(*Id.*).  For instance, Defendant points out that the ALJ noted that "although Plaintiff testified he

required the rest of the day to recuperate after walking around the mall, such fatigue and

dysfunction were not reported to his treatment providers."  (*Id.* (citing Tr. at 21, 34, 389)).

In addition to the examples above, Defendant further points out that "the ALJ noted that

Plaintiff's allegations that his doctors told him he would be unable to return to work [were] not

documented in any treatment notes." (*Id.*).  Moreover, Defendant argues that "Plaintiff's allegations of memory and concentration problems following his coronary artery bypass graft were unsubstantiated by the objective medical evidence, which showed Plaintiff routinely presented with normal mental status examinations and no ongoing memory or concentration problems." (*Id.* (citing Tr. at 21, 566, 627, 670, 739, 744, 767, 771)).

Defendant also states that the ALJ noted that "despite Plaintiff's allegations of abdominal, foot, and knee pain, as well as a 90% defect in his lower extremity nerves," there were few treatment notes of record supporting those contentions.  (*Id.* (citing Tr. at 21, 259, 427)).  Further, Defendant states that "an x-ray of [Plaintiff's] right foot and right knee showed only 'mild' degenerative changes in both joints and both musculoskeletal and neurologic examinations were routinely normal." (*Id.* (citing Tr. at 295, 359, 427, 449, 688, 828, 836-37, 848, 858)).  Defendant further argues that the ALJ noted Plaintiff's allegations as to the duration and frequency of migraine headaches were unsupported by the record.  (*Id.* (citing Tr. at 21-22, 595, 810, 834-841).  Defendant also contends that the opinions of state agency consultant, Thomas Peele M.D., provide substantial evidence supporting the ALJ's finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his pain and other symptoms were not entirely credible.  (*Id.* at 10).  Furthermore, Defendant states that "as the ALJ noted, Plaintiff provided inconsistent information as to when he stopped abusing marijuana." (*Id.* (citing Tr. at 21)).  Defendant states that "[a]lthough Plaintiff testified he quit using the drug in 1997, medical records document ongoing use through early 2014." (*Id.* (citing Tr. at 21, 48, 565, 580, 650, 680, 744, 768, 861)).

While Plaintiff argues that "the ALJ's proffered reasons for discrediting Plaintiff were pretext to deny Plaintiff's application for his refusal to amend his alleged onset date," Defendant

contends that "Plaintiff failed to show how he could be 'penalized' when . . . substantial evidence supports the ALJ's decision that Plaintiff was not entirely credible. (*Id.* at 11). Defendant contends that "[a] review of the hearing transcript shows the ALJ merely raised the possibility that Plaintiff might want to amend his alleged onset date." (*Id.* at 12). Further, while acknowledging that "the ALJ may have suggested that a finding of disability at a later date might have been possible in view of what he saw at the time of Plaintiff's hearing," Defendant argues that "the ALJ's decision reflects that the ALJ reviewed all of the relevant evidence and reached a different conclusion, a conclusion that is supported by substantial evidence." (*Id.*). Defendant argues that, "[a]t most, the ALJ may have committed an error of judgment in making his comments at the hearing, both on and off the record, but he did not commit an error of law." (*Id.*).

Defendant further notes that "Plaintiff relies on extra-record evidence" and argues that "the Court's review is limited to the record made at the administrative level." (*Id.* (citing *Caulder v. Bowen*, 791 F.2d 872, 875-77 (11th Cir. 1986)). Moreover, Defendant argues that "a presumption of honesty exists and Plaintiff has not presented any evidence showing the ALJ acted dishonestly." (*Id.* (citing *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975))).

Finally, Defendant argues that "Plaintiff's argument the ALJ employed the wrong legal standard is without merit." (*Id.* at 13). Defendant contends that "[i]n the context of disability under the Social Security Act, 'total disability' and 'totally disabled' are terms of art implying the individual is disabled for the purposes of the Social Security Act." (*Id.* (citations omitted)). Moreover, Defendant points out that Plaintiff, in a form signed by his representative, indicated that "I am still totally disabled" in requesting Appeals Council review of the ALJ's decision. (*Id.*

(citing Tr. at 9)). Thus, Defendant argues that "[i]t is clear the ALJ considered Plaintiff's claim that he was 'still totally disabled' within the parameters of the Social Security Act" and that Plaintiff's argument is without merit. (*Id.*).

### 2. *Legal Standard*

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine if it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (internal citations omitted). Nevertheless, in reviewing credibility, the Eleventh Circuit has stated that "[t]he question is not . . . whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken

by the claimant for relief of symptoms; and other factors concerning functional limitations."

*Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)). "A clearly articulated

credibility finding with substantial supporting evidence in the record will not be disturbed by a

reviewing court." *Foote*, 67 F.3d at 1562.

      *3.  Analysis*

      Upon consideration of the arguments presented, the Court finds that substantial evidence

supports the ALJ's assessment that Plaintiff was not entirely credible.  Specifically, while

Plaintiff alleges that the ALJ's proffered reasons for discrediting Plaintiff were a pretext to deny

Plaintiff's application for his refusal to amend his alleged onset date" (Doc. 14 at 9), the Court

agrees with Defendant that Plaintiff has failed to show how he could be penalized when

substantial evidence supports the ALJ's decision that Plaintiff was not entirely credible (Doc. 15

at 11).

      For example, the ALJ noted that in August 2012, a month after Plaintiff's coronary artery

bypass graft, Plaintiff reported he had done "extremely well walking around the mall without

angina and even walking up a flight of stairs without difficulty."  (Tr. at 19 (citing Tr. at 389)).

The ALJ further pointed out, at that time, that Plaintiff's cardiac examination showed no angina,

no palpitations, gallop, thrill, or lift; normal S1 and S2; and normal blood pressure.  (Tr. at 19

(citing Tr. at 391)).  The ALJ further noted an October 2010 echocardiogram that showed low

normal left ventricular systolic function and an ejection fraction of 50-55%.  (Tr. at 19-20 (citing

Tr. at 475)).[3]  Further, as the ALJ noted, a March 2013 cardiac examination was normal.  (Tr. at

20 (citing Tr. at 636)).  At that time, Plaintiff denied chest pain, discomfort, and shortness of

---

[3] Defendant argues that "an ejection fraction between 50% and 55% is generally considered
borderline."  (Doc. 15 at 6).

breath.  (Tr. 636).  Similarly, the ALJ noted that Plaintiff denied chest pain, shortness of breath, palpitations, or edema during a July 2013 follow-up visit.  (Tr. at 20 (citing Tr. at 609)). Moreover, while the record showed some worsening of symptoms, by December 2013, the ALJ noted that Plaintiff's cardiac exam was normal, a stable EKG, and no "chest pain, dyspnea, palpitations, syncope, or peripheral edema on current medications."  (Tr. at 20 (citing Tr. at 787, 792)).  Based on these citations to substantial medical evidence of record, the Court agrees with Defendant that the "objective medical evidence showing generally normal cardiac findings after his coronary artery bypass graft and conservative treatment provides substantial evidence supporting the ALJ's credibility assessment."  (Doc. 15 at 7).

Further, the ALJ noted Plaintiff's allegation that his doctors told him he would be unable to return to work.  (Tr. at 21).  Nevertheless, as the ALJ stated, this allegation does not appear to be documented in any treatment notes, and Plaintiff has not pointed to any medical records to dispute the ALJ's conclusion.  (*See* Doc. 14).  Similarly, the ALJ noted Plaintiff's allegations of memory and concentration problems following his coronary artery bypass graft.  (Tr. at 21). Nevertheless, as the ALJ stated, these allegations appear to be unsubstantiated by the objective medical evidence.  (Tr. at 21).  In fact, the ALJ stated that "the records show [Plaintiff] routinely presented with a normal mood and affect, and oriented to person, place and time, and in August 2013 Ms. Hanno noted the claimant was focused throughout contact.  Moreover, the record does not document ongoing memory or concentration problems."  (Tr. at 21 (citing Tr. at 566, 627, 670, 739, 744, 767, 771)).  Plaintiff has not pointed to any medical records to dispute the ALJ's conclusion on this issue.  (*See* Doc. 14).

Other examples of inconsistencies from Plaintiff's testimony cited by the ALJ include the fact that Plaintiff alleged abdominal, foot, and knee pain, as well as a 90% defect in his lower

extremity nerves.  (Tr. at 21).  Nevertheless, as the ALJ and Defendant pointed out, the treatment notes do not appear to support those contentions.  (Tr. at 21, 259, 427).  Additionally, as the ALJ noted, Plaintiff provided inconsistent information as to when he stopped abusing illegal drugs. (Tr. at 21).  Plaintiff testified he quit using illegal drugs in 1997.  (Tr. at 48).  Yet, medical records show frequent marijuana use through 2014.  (Tr. at 565, 580, 650, 744, 768).[4]

In sum, the above citations by the ALJ to the medical evidence of record provides substantial evidence supporting the ALJ's credibility finding.  Moreover, these citations articulate clear reasons why the ALJ made his credibility finding as to Plaintiff.  Accordingly, because the ALJ clearly articulated his credibility finding with substantial supporting evidence in the record, the Court declines to disturb the ALJ's credibility findings.  *See Foote*, 67 F.3d at 1562.

The Court notes that Plaintiff also argues that the ALJ improperly discredited Plaintiff due to his participation in mundane daily activities.  (Doc. 14 at 9).  Generally, participation in daily activities of short duration, such as housework or fishing, does not disqualify a claimant from disability.  *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).  Nevertheless, a claimant's daily activities are a factor for the ALJ to consider in determining credibility.  *See Moreno*, 366 F. App'x at 28; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Here, it is clear that the ALJ did not review Plaintiff's daily activities exclusively. Rather, in determining Plaintiff's credibility, the ALJ reviewed the medical records as a whole, including a review of Plaintiff's daily activities.  (*See* Tr. at 19-22).  The ALJ's review of the daily activities was only part of the evidence the ALJ considered in making his credibility

---

[4] It appears that Plaintiff testified at the time of the hearing that he smoked a joint "every now and then."  (Tr. at 48).  Nevertheless, even this appears to be inconsistent with the medical records that show frequent use of marijuana.  (Tr. at 565, 580, 650, 744, 768).

determination.  (*See* Tr. at 19-22).  Moreover, as discussed above, the ALJ clearly articulated

other reasons why Plaintiff's statements concerning the intensity, persistence, and limiting

effects of his symptoms were not entirely credible.  Thus, the ALJ rightfully considered

Plaintiff's daily activities as part of the record.  *See Moreno*, 366 F. App'x at 28; *see also* 20

C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The Court, therefore, finds no error in the ALJ's

consideration of Plaintiff's activities of daily living as a part of the record in determining

Plaintiff's credibility.

      Moreover, the Court agrees with Defendant that Plaintiff's argument that the ALJ

employed the wrong legal standard is without merit.  (Doc. 15 at 13).  Specifically, while

Plaintiff contends that he "is not alleging that he is 'totally disabled,'" his attorney signed a form

on Plaintiff's behalf stating "I am still totally disabled and unable to be gainfully employed"

when requesting review from the Appeals Council.  (Tr. at 9).  The Court finds that Plaintiff has

not demonstrated that the ALJ's credibility analysis failed to comply with the relevant

regulations.

      Furthermore, the Court agrees with Defendant that "[a] review of the hearing transcript

shows the ALJ merely raised the possibility that Plaintiff might want to amend his alleged onset

date."  (Doc. 15 at 12).  At the hearing, the ALJ stated

> He has an onset date of 7/9/12.  And I know what happened on 7/9/12, so I work
> right around there.  So I understand why he did that.  But he really didn't begin to
> - - get bad until 10/30 - - started getting really bad until October of last year.  That's
> just my view of the record.  So if you're - - if you want to consider a change in the
> onset date, I welcome you.  If you don't, that's fine too.  It won't hurt your case.

(Tr. at 30-31).  The Court is unable infer any nefarious purpose or bias from these statements on

the record by the ALJ.

The Court notes that the ALJ later stated that "I agree with you [sic] do have problems.  I disagree at the timing.  Basically you're [sic] physical exam was treat benign after a while, it was low.  That's my point."  (Tr. at 35).  The ALJ continued, stating "I'm not going to argue that you have problems now.  It's when you want me to find that you had problems.  And I'm just not going to find them."  (Tr. at 35).  Further, during Plaintiff's counsel's closing argument, Plaintiff's counsel stated "I would submit to you that the claimant cannot perform his past relevant work based on his combination of both physical and psychological impairments."  (Tr. at 58).  The ALJ interrupted stating, "I agree he can't -- I agree he can't do it now."  (Tr. at 58).

Despite these statements, the ALJ's Decision clearly demonstrates that the ALJ reviewed all of the relevant evidence and reached a conclusion that is supported by substantial evidence.  As discussed above, the ALJ provided substantial evidence for his finding that Plaintiff was not entirely credible.  Thus, the Court agrees with Defendant that the ALJ did not commit an error of law.  (*See id.*).

Finally, the Court notes that Plaintiff relies on evidence outside of the record for his assertion that the ALJ penalized him for not changing Plaintiff's onset date.  (*See e.g.*, Doc. 14 at 8).  By doing so, Plaintiff clearly calls into question the impartiality of the ALJ.  On this point, the Court notes that the "impartiality of the ALJ is integral to the integrity of the system." *Hinson v. Colvin*, No. 2:14-cv-222-FtM-DNF, 2014 WL 6769341, at *3 (M.D. Fla. Dec. 1, 2014) (quoting *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996)).  Nevertheless, courts "start from the presumption that administrative adjudicators, such as ALJs are unbiased." *Id.* (citing *McClure*, 456 U.S. at 195-96)).  "[A] claimant challenging this presumption carries the burden of proving otherwise."  *Strople v. Colvin*, No. 3:13-cv-1518-J-34MCR, 2015 WL 1470866, at *7 (M.D. Fla. Mar. 31, 2015).

In this instance, Plaintiff has not provided sufficient evidence to demonstrate that the ALJ was biased due to Plaintiff's refusal to amend the alleged onset date. As stated above, the ALJ's "on the record" statements, *at most*, equate to an error in judgment. The Court does not construe the ALJ's statements as being biased against Plaintiff. Moreover, there is no way for the Court to verify or evaluate the alleged "off the record" statements by the ALJ. Accordingly, the Court finds that Plaintiff has not overcome the presumption that the ALJ was unbiased. *See Strople*, 2015 WL 1470866, at *7. Regardless, as discussed above, Plaintiff has failed to show how he could have been penalized by the ALJ when substantial evidence supports the ALJ's finding that Plaintiff was not entirely credible. (*See* Doc. 15 at 11).

In this case, the ALJ clearly articulated explicit and adequate reasons for discrediting Plaintiff's subjective testimony, as required by law. *See Foote*, 67 F.3d at 1562. Thus, based on the ALJ's well-articulated reasons and citations to substantial contradictory medical evidence of record, the Court cannot make a finding that the ALJ was wrong to discredit Plaintiff's testimony. *See Werner*, 421 F. App'x at 939. Accordingly, the ALJ did not err in finding Plaintiff not entirely credible.

### B. Plaintiff's Hearing Before the ALJ

The second issue raised by Plaintiff is his contention that the ALJ failed to provide claimant with a full and fair hearing within the meaning of 20 C.F.R. §§ 404.944, 416.1444 because he refused to consider Plaintiff's testimony in determining the onset date for disability. (Doc. 14 at 2, 10).

### 1. Arguments

Plaintiff argues that an ALJ has "a basic obligation to develop a full and fair record, which includes the obligation to provide a full and fair hearing." (*Id.* at 10 (citing *Cowart v.*

*Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).  Here, Plaintiff argues that prior to hearing the majority of his testimony, "the ALJ interjected stating he was essentially not going to find Plaintiff's problems to be disabling prior to October 2013."  (*Id.* at 11 (citing Tr. at 35)). Plaintiff argues that the ALJ should not formulate the RFC assessment and determine whether a claimant is able to return to work until after a full and fair hearing.  (*Id.* (citations omitted)). Plaintiff argues that the ALJ "clearly indicated that he had already come to a decision regarding the RFC and whether Plaintiff was disabled prior to allowing Plaintiff to fully testify at hearing." (*Id.*).  Thus, Plaintiff argues that "the decision provided was clearly not based on the 'hearing record' and the rationale provided in the ALJ Decision simply constitutes *post hoc* rationale to support the ALJ's pre-judged decision to deny the claim based on Plaintiff's refusal to amend his disability onset date."  (*Id.*).

Plaintiff further argues that "[m]ore troubling, the ALJ indicated unequivocally multiple times on the record and off the record at hearing that he believed Plaintiff was disabled under the Act as of October 2013."  (*Id.* (citing Tr. at 31, 35, 58)).  Plaintiff contends that "the ALJ directed Plaintiff to restrict his testimony at [the] hearing to the time period prior to October 2013, 'agreeing' that Plaintiff was disabled now."  (*Id.* (citing Tr. at 58)).  As a result, Plaintiff argues that he "was never permitted to fully develop his testimony concerning the time period subsequent to October 2013."  (*Id.*).  Thus, Plaintiff contends that he "was denied a full and fair hearing because the ALJ failed to inquire fully into the issues presented."  (*Id.* (citing 20 C.F.R. §§ 404.944, 416.1444)).

Defendant disagrees, arguing that "a presumption of honesty and integrity exists in those who serve as adjudicators for administrative agencies."  (Doc. 15 at 13 (citing *McClure*, 456 U.S. at 195; *Withrow*, 421 U.S. at 47)).  Defendant further argues that Plaintiff has failed to overcome

his burden of demonstrating "that he was prejudiced by the ALJ's actions regarding the development of the record at the hearing." (*Id.* at 14).

Regardless, Defendant argues that Plaintiff, represented by counsel, "had a meaningful opportunity to present his case and has identified no prejudice from his choice not to testify regarding his impairments and functioning after October 2013." (*Id.*). In fact, Defendant points out that Plaintiff's counsel stated that he had no further questions at the end of the hearing. (*Id.* at 15 (citing Tr. at 51)). Defendant further argues that "it is unclear how any statements made by the ALJ during the closing could have limited Plaintiff's earlier testimony." (*Id.*). Thus, Defendant contends that "[a]lthough Plaintiff regrets his decision not to testify to the full time period at issue, the agency afforded Plaintiff a meaningful opportunity to present his case, which is all that due process requires." (*Id.* (citing *Matthews v. Eldridge*, 424 U.S. 319, 349 (1976)).

Finally, Defendant states that "although the ALJ may have believed that a finding of disability at a later date might have been possible in view of what he saw at the time of Plaintiff's hearing," Defendant argues that "the ALJ's decision reflects that the ALJ reviewed all of the relevant evidence, including evidence submitted post-hearing (Tr. 832-63), and reached a different conclusion." (*Id.*).

### 2. Analysis

As stated above, the Court finds that Plaintiff has not provided sufficient evidence that the ALJ was biased because of the refusal to amend the alleged onset date. Thus, the Court finds that Plaintiff has not overcome the presumption that the ALJ was unbiased. *See Strople*, 2015 WL 1470866, at *7. Accordingly, the Court agrees with Defendant that Plaintiff has failed to overcome his burden of demonstrating "that he was prejudiced by the ALJ's actions regarding the development of the record at the hearing." (Doc. 15 at 14). As such, the Court finds that

Plaintiff's argument – *i.e.*, that "the decision provided was clearly not based on the 'hearing record' and the rationale provided in the ALJ Decision simply constitutes *post hoc* rationale to support the ALJ's pre-judged decision to deny the claim based on Plaintiff's refusal to amend his disability onset date" – is without merit.  (*See* Doc. 14 at 11).

Further, despite Plaintiff's argument that the ALJ directed Plaintiff to restrict his testimony at hearing to the time period prior to October 2013, Plaintiff has failed to show how he was prejudiced by not testifying about his impairments and functioning after October 2013.  In this case, Plaintiff was represented by counsel, and there is no indication in the record or otherwise that Plaintiff was denied the opportunity to be heard.  In fact, upon review of the transcript, the ALJ never specifically *restricts* Plaintiff's testimony to the period prior to October 2013.  Furthermore, at the end of the hearing, Plaintiff's counsel stated that he had no further questions.  (Tr. at 51, 59).  Thus, the Court agrees with Defendant that, although Plaintiff likely regrets his decision not to testify to the full time period at issue, it appears that Plaintiff had a meaningful opportunity to present his case.  (*See* Doc. 15 at 15).  Accordingly, remand is not warranted on this ground.

### C.  Plaintiff's Mental Impairments

The final issue raised by Plaintiff is his contention that the ALJ committed harmful error by finding that Plaintiff's mental impairments, including posttraumatic stress disorder, depression, and anxiety, were non-severe.  (Doc. 14 at 2, 12).  Defendant disagrees, arguing that substantial evidence supports the ALJ's severity assessment.  (Doc. 15 at 20).

On this issue, the Court notes that an impairment is "severe" under the Commissioner's regulations if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c); 404.1521(a).  According to the Eleventh Circuit, however,

"[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Rather, the ALJ must only consider the claimant's impairments in combination, whether severe or not. *Id.* If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison*, 814 F.2d at 588).

In this case, the Court notes that the ALJ made a determination that Plaintiff suffered from a number of severe impairments including: coronary artery disease, atrial flutter, and obesity. (Tr. at 15). Because the ALJ made a determination that Plaintiff suffered from at least one severe impairment, the ALJ was not required to list every impairment that may be classified as severe. *See Heatly*, 382 F. App'x at 825. Rather, the only requirement is that the ALJ considered all of Plaintiff's impairments in combination, whether severe or non-severe. *See id.*

Here, the record demonstrates that the ALJ evaluated all of Plaintiff's impairments in combination, whether severe or non-severe. Specifically, in making his RFC determination, the ALJ stated that:

> In arriving at the residual functional capacity stated herein, the undersigned has also *considered all symptoms* and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p.

(Tr. at 15) (emphasis added). Furthermore, the Court notes that the ALJ specifically considered Plaintiff's mental impairments and found them to be non-severe. (Tr. at 17-18). Moreover, the record shows that the ALJ considered Plaintiff's mental impairments in making his RFC determination and also at step four. (Tr. at 22-23). Thus, regardless of whether the ALJ erred in his conclusion that Plaintiff's mental impairments were non-severe, the record demonstrates that

the ALJ considered Plaintiff's mental impairments in combination with Plaintiff's other impairments.  Therefore, the ALJ applied the correct legal standard and did not err in failing to find Plaintiff's mental impairments are severe, or if he did err, the error was harmless.  *See Heatly*, 382 F. App'x at 825.

III.  **Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on September 14, 2016.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties